J. A. PUTNAL, *Plaintiff in Error,* v. W. E. INMAN, *Defendant in Error.*

### Opinion Filed December 16, 1918.

1. A communication, although it contains criminating matter, is privileged when made in good faith upon any subject in which the party communicating has an interest, or in reference to which he has a right or duty, and made upon an occasion to properly serve such right, interest or duty, and in a manner and under circumstances fairly warranted by the occasion and the duty, right or interest, and not so made as to unnecessarily or unduly injure another, or to show express malice.

2. Merchants have the right to organize for their own protection and enter into mutual agreements for the purpose of giving each other the benefit of their knowledge about those in the community who meet their obligations promptly and those who do not, and a communication on this subject made by a member of the association to the other members, is privileged, if made in good faith and in such a manner and on such an occasion, as to properly serve the purposes of the association.

Writ of error to Circuit Court for Taylor County; M. F. Horne, Judge.

Judgment reversed.

*Davis* & *Diamond, for Plaintiff in Error;*

*Wm. T. Hendry,* for Defendant in Error.

BROWN, C. J.—W. E. Inman sued J. A. Putnal in the Circuit Court of Taylor County for libel. The case was tried on an agreed statement of facts and judgment ren-

dered for the plaintiff, and the defendant took writ of error to this court.

The defendant was a member of the Perry Merchants' Protective Association, composed of a number of the merchants of the town of Perry, having a constitution and by-laws and an agreement signed by all its members, which contained these recitals: "Whereas past experience has taught the undersigned that there are those who visit and for a time live in a growing town like Perry, who are inclined to live on the confidence that the merchants have in humanity;" and "by reason of such confidence the merchants of the town of Perry have time and again extended credit to those who were not worthy of such credit," and "in the past it has been possible for persons to obtain several ing or boycotting by refusing to trade with him, but is only an agreement not to extend him credit without assuming whatever indebtedness he may owe to any other member of the association.

In the case of Woodhouse v. Powles, 43 Wash. 617, 86 Pac. Rep. 1063, the court said: "Counsel for the appellant, however, as we understand his argument, takes the position that the association was in itself unlawful, and that the act of the respondents in notifying their fellow members that the appellant was delinquent on one of his purchases when he was not so delinquent was an act libelous *per se,* from which malice is presumed, and entitles him, in itself, to recover substantial damages, without proofs of any other fact. As to the first position, we do not think it tenable. Courts, it is true, uniformly hold it libelous for a person or association of persons to attempt to coerce the payment of debts by holding the debtors out to the world as being dishonest and unworthy of credit, or to publish their names in circulars, pamphlets

and books for distribution among dealers as persons who
have contracted debts and failed to pay them; but no
court, so far as we are advised, has held it unlawful for
dealers in a common line of goods to agree among them-
selves not to extend credit to a person who has defaulted
in a payment to some one of them. The right that each
one has to protect his legitimate interests justifies such
an agreement. And, it being lawful to enter into such
an agreement, it is, of course, lawful, and hence not libel-
ous, for one party to the agreement to report to the
others the names of such of his customers as have become
delinquent; and especially is this so where, as in this
case, the purchaser is informed in advance of his pur-
chases that a denial of further credit will be the conse-
quence of his failure to pay at the required time."

In the case at bar the plaintiff was informed in ad-
vance by a communication from defendant that the plain-
tiff was "under obligation to report to the Association's
attorney the name of every person who does not pay his
or her bill promptly," and that defendant "would dis-
like very much to turn your name over to the association,
as it would probably affect your credit in the town of
Perry," and he was asked to "come to see us and let us
have a satisfactory understanding of the matter."

In noting the distinction between the case of Muetze v.
Tuteur, 77 Wis. 236, 46 N. W. Rep. 123, 9 L. R. A. 86,
and the one under consideration the court in the case of
Woodhouse v. Powles, *supra*, said: "But the principal
upon which the case rests differs from that involved in
the case before us. Public policy forbids the resort to
this method for the purpose of collecting debts, but no
rule of public policy forbids a wholesaler to refuse to
credit a retail dealer who has made default in his pay-
ments to another wholesaler; and it follows, as of course,

that he may resort to any legitimate method for ascertaining who is in default. As we hold that the method pursued in this case was a legitimate one, no action can be found on that act alone.".

The pivotal question in this case is the nature of the . communication made by the defendant to the other members of the association through their attorney. If it was a privileged communication no action will lie.

The rule governing privileged communications is thus laid down by this court: "A communication, although it contains criminating matter, is privileged when made in good faith upon any subject in which the party communicating has an interest, or in reference to which he has a right or duty, and made upon an occasion to properly serve such right, interest or duty, and in a manner and under circumstances fairly warranted by the occasion and the duty, right or interest, and not so made as to unnecessarily or unduly injure another, or to show express malice." Abraham v. Baldwin, 52 Fla. 151, 42 South. Rep. 591.

In order that merchants may prudently do a credit business, it is expedient for them to know those in the community who meet their obligtaions promptly and those who do not, and they have the right to organize and enter into mutual agreements, for the purpose of giving each other the benefit of their knowledge on these subjects, and a communication made by a member of the association to the other members, is privileged, if made in good faith and in such a manner and on such an occasion as to properly serve the purpose of the association.

It does not appear from the agreed statement of facts that the defendant charged the plaintiff with dishonesty or dishonorable dealings, or imputed to him any questionable transaction, but only that "defendant claimed

an account due by plaintiff which plaintiff refused to pay," and "that thereupon the account was placed with E. C. Calhoun for collection" and that Calhoun "entered plaintiff's name together with the defendant's name and the amount claimed by the defendant against plaintiff in a book kept by B. P. Blanton, a member of said association," and furnished P. F. Bloodworth in writing with plaintiff's name and the amount of his account with defendant.

The agreed statement of facts also shows that Calhoun would swear that he did not notify all the members of the association that the defendant had given him a claim against the plaintiff for collection, and that the only persons notified by him were Blanton and Bloodworth, both of whom were members of the association and were also his private clients, and that he gave them the information about the claim at their request and as their attorney. This is not contradicted.

Even if Calhoun when he notified these parties was acting as the attorney of the associations and notified them in accordance with the requirements of the Constitution, such notice was a privileged communication, and it does not appear that the privilege was abused by giving it undue publication by proclaiming it to persons other than members of the association.

There is nothing in the agreed statement of facts nor in the declaration itself to show malice on the part of the defendant, nor did the attorney of the association disregard the restraints and qualification imposed by law upon the publicity to be given to such communications, nor did he exceed reasonable bounds in making the communication. As the communication made by Calhoun to the members of the association was privileged, there can

be no recovery, and it is needless to discuss the many questions presented by the assignments of error on the pleadings.

The judgment is reversed.

All concur.