383 So.2d 1095 (1980)
PAN AMERICAN BANK OF MIAMI and Pan American Bancshares, Inc., Etc., Appellants,
v.
Richard OSGOOD, Appellee.
No. 78-2276.
District Court of Appeal of Florida, Third District.
April 22, 1980.
Rehearing Denied June 18, 1980.
*1096 Smathers & Thompson, Shepherd D. Johnston, Miami, for appellants.
Greene & Cooper, Robyn Greene, Joan M. Bolotin, William Huggett, Miami, for appellee.
Before HUBBART and NESBITT, JJ., and PEARSON, TILLMAN (Ret.), Associate Judge.
PER CURIAM.
This is an appeal from a final judgment entered on a jury verdict awarding appellee $6,000 in compensatory damages and $25,000 in punitive damages on a complaint alleging negligent injury to appellee's credit reputation.
For a convenient reference, the appellant will be referred to as "Bank" and appellee as "Osgood."
The plethora of points on appeal are more readily disposed of after a recitation of the salient facts which follow:
Osgood became the assignee of a promissory note and a chattel mortgage on a motor home which the Bank had financed on behalf of the original owner. Osgood assumed payment of the monthly installments due on the note. The Bank also held power of attorney which authorized it alone to convey or transfer title.
Approximately seven months later, Osgood drove the motor home to Texas where he found a purchaser. He telephoned the Bank's loan officer and inquired as to whether the Bank would accept $9,500 as payment for the motor home. The loan officer later advised him that the Bank would accept the sum of $10,500. That sum was remitted to the Bank, $9,500 from the acquiring purchaser and $1,000 from Osgood. The Bank accepted the payments and transferred title to the acquiring purchaser. *1097 Osgood testified that it was his understanding with the loan officer that the remittance of $10,500 was in complete discharge of his obligation to the Bank. The Bank had no further communication with Osgood.
Pursuant to its contract with a credit reporting agency, the Bank assigned this transaction an "I-9" rating and so reported it. "I" stands for charge-off and "9" indicates the worst possible credit rating. The "charge-off" indicates that the Bank removed the balance from its list of assets and charged the balance against its loan loss reserve. A "charge-off" occurs when the Bank suffers a loss irrespective of whether the debtor still owes anything. While it is somewhat inconsistent, the Bank also rebated interest under the transaction under the applicable regulations and arrived at a deficiency of approximately $1,700.
Six months after the foregoing transaction, Osgood applied for a loan through another bank in order to finance a new business venture. The loan application was denied due to the poor credit rating he received from the foregoing transaction. The loan officer at that bank indicated he would have denied Osgood's loan regardless of whether it had been reported as a "charge-off" or a deficiency. This was Osgood's first knowledge of an unfavorable credit rating.
Osgood returned to the Bank to talk with the loan officer with whom he had formerly discussed the sale. There, he spoke with a new loan officer who told him that it appeared a settlement had been made and there would be no problem in clearing up the matter. The loan officer advised Osgood that he would consult with his superiors and advise him. He later told Osgood the Bank's attorney advised that the Bank should assume the position that the monies were still owed to it. The successor loan officer disavowed the action of the loan officer with whom Osgood had previously conducted business. Osgood testified that the loan officer advised him that only ten per cent of those who threaten to bring legal action against the Bank do so, and then, only one per cent are successful. After this conversation, he received a letter from the Bank that he had a deficiency balance on the note of $1,729.56, representing a charge-off and unless the matter was settled the Bank would place it in the hands of attorneys for collection.
Osgood, having been unsuccessful in obtaining a loan, invested his own savings into a new business venture which failed for lack of sufficient capital. He then commenced this action against Pan American Bank of Miami and its holding company, Pan American Bancshares, Inc. The holding company was eventually dismissed from the suit with prejudice. The Bank answered the complaint and filed a counter-claim to collect the deficiency claimed on the promissory note to which Osgood interposed affirmative defenses of waiver and settlement. After trial by jury, a verdict in favor of Osgood and against the Bank was returned. Judgment was entered and this appeal ensued.
At trial, the Bank requested that the jury be instructed that a new and independent consideration was necessary in order to satisfy the outstanding balance due on the note and obligation. The trial court properly refused to so instruct the jury. In transactions governed by the Uniform Commercial Code, Section 673.408, Florida Statutes (1977), "no consideration is necessary for an instrument or obligation ... given in payment ... for an antecedent obligation of any kind." Holm v. Woodworth, 271 So.2d 167 (Fla. 4th DCA 1972). See Newbern v. Pan American Bank of Orlando, N.A., 368 So.2d 425 (Fla. 4th DCA 1979).
The Bank contends that Osgood's cause of action is contained in the common law counts of libel and slander to which it would have the affirmative defense of "good motive." It further contends that Osgood should not be permitted to characterize his action as negligence in order to avoid the affirmative defense and requirements of a defamation action. A party has the right to choose its remedy and may *1098 pursue any theory provided that a cause of action has been stated. Hines v. Trager Construction Co., 188 So.2d 826, 830 (Fla. 1st DCA 1966). See 1 Am.Jur.2d, Actions, §§ 31, 145 (1962); Fla.R.Civ.P. 1.110.
The Bank also contends the trial court erred in denying its motion for directed verdict on the plaintiff's claim because the evidence did not establish the Bank's negligence. This argument focuses upon the fact that the Bank was under a contractual obligation with the credit bureau to report the credit standing of its customers, which the credit bureau disseminates to other parties to the agreement. The Bank points to the fact that it actually suffered a loss from the deficiency on a promissory note in an amount claimed by its counter-claim and having truthfully and correctly reported it did not breach any duty to Osgood. The fact that actual loss was suffered or that such loss was truthfully and correctly reported is simply irrelevant in that the obligation between Osgood and the Bank had been extinguished by payment. Osgood set forth a cause of action under the theory that the Bank was negligent in handling his account. He argued that under the circumstances of this case the Bank had the duty to either give notice of the charge-off of his loan, attempt to collect the deficiency balance of the loan from him or notify him of the report sent to the credit bureau. He alleged that the Bank breached that duty and that the breach was a proximate cause of the damages he sustained. The jury was properly charged as to the cause of action for negligence and, after weighing all the evidence presented, found that a duty existed and the Bank's breach of that duty was the cause of the damages suffered by Osgood.
The Bank further contends that the trial court erred in denying its motion for leave to file an amended answer to the plaintiff's claim. The Bank wanted to add, by the amendment, the defense of qualified privilege accorded under the Fair Credit Reporting Act, 15 U.S.C. § 1681h(e) (1970). This request, which was presented late in the trial, attempted to inject somewhat complicated issues into the case. The trial court was in the best position to assess the timeliness and possible disruption and prejudice resulting from the injection of a new issue at that state of the proceedings. We will not substitute our judgment for that of the trial court. Whitehall Realty Corporation v. Manufacturers Trust Company, 100 So.2d 617 (Fla. 1958); Pender v. Skillcraft Industries, Inc., 358 So.2d 45 (Fla. 4th DCA 1978).
Finally, the Bank contends that the evidence was insufficient to warrant an award of punitive damages. We are required to review the evidence adduced in the view most favorable to the prevailing party. In this posture, there was an abundance of evidence to support a punitive damage award. See Fla.Std.Jury Instr. (Civ.) 6.12; Doral Country Club, Inc. v. Lindgren Plumbing Company, 175 So.2d 570 (Fla. 3d DCA 1965) [gross negligence as to indicate the wanton disregard of rights of others;] Lan-Chile Air Lines, Inc. v. Rodriguez, 296 So.2d 498 (Fla. 3d DCA 1974) [reckless indifference to the rights of others].
Although not raised, we note that the judgment appealed from has been entered jointly against the Bank and its holding company, Pan American Bancshares, Inc., which had been dismissed as a party prior to trial. It is fundamental error to enter a judgment against an entity not a party to the action. Board of Public Instruction of Dade County v. Feller, 219 So.2d 737 (Fla. 3d DCA 1969). We therefore delete Pan American Bancshares, Inc. from the judgment appealed from.
We have reviewed the various other contentions which the Bank raises and find them to be without merit.
For the foregoing reasons, the judgment, as modified, is affirmed.
NESBITT, Judge (dissenting).
I cannot join the majority in sanctioning a negligent defamation. Labeling the plaintiff's cause of action as "negligence" is contrary to common law and deprives the *1099 defendant of its constitutionally protected defense of qualified privilege. The Declaration of Rights of the Florida Constitution of 1968, Article I, Section 4 provides:
Every person may speak, write and publish his sentiments on all subjects but shall be responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions and civil actions for defamation the truth may be given in evidence. If the matter charged as defamatory is true and was published with good motives, the part[ies] shall be acquitted or exonerated.
The defense of qualified privilege is not recognized in an action for negligence. By its nature, that affirmative defense is available only for intentional torts such as defamation. It is the rule in this jurisdiction that the conduct of a defendant committing an intentional tort precludes submitting a plaintiff's cause of action to the trier of facts on a negligent theory. Williams v. Cotton, 346 So.2d 1039 (Fla. 1st DCA 1977); McDonald v. Ford, 223 So.2d 553 (Fla. 2d DCA 1969). The Declaration of Rights of the Florida Constitution makes this rule uniquely applicable for the intentional tort of defamation.
The false imputation of a poor credit standing is clearly actionable in libel. 20 Fla.Jur. Libel and Slander §§ 30-31. In this case, Pan American, by prearranged plan, submitted Osgood's credit rating to a credit reporting agency which disseminated it to another member bank which, in turn, denied Osgood a loan based on the report. Since the deficiency balance on Osgood's account claimed by Pan American had been extinguished, the jury could well have found that Pan American's action constituted libel per se even over the affirmative defense of qualified privilege, Matthews v. Deland State Bank, 334 So.2d 164 (Fla. 1st DCA 1976) and Vinson v. Ford Motor Credit Company, 259 So.2d 768 (Fla. 1st DCA 1972) but Pan American was nevertheless entitled to have that defense submitted to a jury. Consequently, Pan American's motion for directed verdict should have been granted. Citizens National Bank of Orlando v. Youngblood, 296 So.2d 92 (Fla. 4th DCA 1974).
Unlike the majority, I cannot find any actionable negligence to support Osgood's recovery. This deficiency became apparent at the charge conference. At that time, the trial court questioned Osgood's counsel with respect to the legal basis or authority for the duty owed by Pan American which would be necessary to support Osgood's claim for actionable negligence. When his counsel was unable to supply the court with such basis or authority, the trial court instructed the jury as follows:
Whether Pan American Bank owed a duty to Richard Osgood to give notice of the charge-off of his loan to the bank, attempt to collect the deficiency balance of the loan from Richard Osgood, or notify Richard Osgood of the report to the credit bureau. Such a duty does not exist as any requirement of the law.

However, if you find that such a duty did exist under the circumstances of this case, then you must determine whether Pan American Bank was negligent in performing the duty, and whether Mr. Osgood suffered damage as a result. (emphasis added).
Through its instruction, the trial court advised the jury as to the precise basis for Osgood's claim of negligence and then advised them that no such duty existed in any requirement of the law. In so instructing the jury, the court abdicated its judicial function, in favor of the jury, to ascertain the existence of a duty owed by Pan American to Osgood. In discussing the functions of the court and the jury in a negligence action, Dean Prosser states:
The existence of a duty. In other words, whether upon the facts and evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other  or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law, to be determined by reference to the body of *1100 statutes, rules, principles and precedents which make up the law; and it must be determined only by the court... .
A decision by the court that, upon any version of the facts, there is no duty must necessarily result in judgment for the defendant.
W. Prosser, Law of Torts, 206 (4th Ed. 1971). Accord Restatement (Second) Torts, § 328B (1965); 57 Am.Jur.2d Negligence § 34 (1971); 65A C.J.S. Negligence § 252, p. 804 (1966).
An analysis of Osgood's claim, in light of the record presented, demonstrated the failure of Osgood to plead or prove the existence of a legal duty owed by Pan American to protect Osgood from the injury complained of founded in negligence. Lake Parker Mall, Inc. v. Carson, 327 So.2d 121 (Fla. 2d DCA 1976).
Pan American was under no duty to collect the deficiency balance on the note from Osgood. The non-existence of a duty on the part of Pan American can hardly be imputed as an affirmative duty owed by it to Osgood.
There is no reason or precedent in the common law to support Osgood's claim that he should have been notified either before or after the charge-off was reported to the credit reporting agency. To the contrary, the case of Putnal v. Inman, 76 Fla. 553, 80 So. 316 (1918) authorizes parties having a community of interests to associate for the purpose of communicating the credit status of prospective customers and such communication is privileged when made in good faith and in the manner and on occasions which properly serve the purpose of the association.
There was nothing in the statutory law which required notice or disclosure to be given to a customer until Congress addressed the problem by the enactment of the Fair Credit Reporting Act, 15 U.S.C.A. §§ 1681-1681t (1970). That Act requires disclosure of certain credit reporting information to consumers. To the extent that the Fair Credit Reporting Act does not place limitations or restrictions on the decision of Putnal v. Inman, supra, that decision remains the controlling precedent in this jurisdiction. See 15 U.S.C.A. § 1681t (1970). In this case, the transaction between Osgood and Pan American is excluded from the Fair Credit Reporting Act by definition. 15 U.S.C.A. § 1681a(d)(A) (1970) ["any report containing information solely as to transactions or experiences between the consumer and the person making the report"]; see United States v. Puntorieri, 379 F. Supp. 332 (E.D.N.Y. 1974). Putnal v. Inman, supra, clearly negates any requirement of notice to Osgood under the facts of this case.
In addition to the absence of any statutory or common law requirement to give notice, the evidence adduced at trial does not disclose the existence of any practice prevailing in the banking industry which would require Osgood to be notified that his credit status was being submitted to or had been submitted to a credit reporting agency.
For these reasons, Pan American's motion for directed verdict should have been granted. Atlantic Aircraft Corp. v. English, 198 So.2d 862 (Fla. 3d DCA 1967); Smith's Bakery, Incorporated v. Jernigan, 134 So.2d 519 (Fla. 1st DCA 1961).
The majority permitted the appellee to circumvent the defenses allowable under the law of defamation by proceeding in negligence when, in fact, no negligence had been shown to exist. I respectfully disagree with that result.