LOMAS BANK USA & Chemical Bank
of New York, Appellants,

v.

Edward "Chip" FLATOW, Appellee.

No. 04–92–00549–CV.

Court of Appeals of Texas,
San Antonio.

Feb. 28, 1994.

Rehearing Denied May 27, 1994.

Cathy J. Sheehan, Kerby Johnson, R. Scott Weber, Plunkett, Gibson & Allen, Inc.,

San Antonio, Thomas E. Bilek, Wilshire, Scott & Dyer, Houston, for appellants.

Gregory W. Canfield, Gordon W. Slade, Law Offices of Gregory W. Canfield, San Antonio, for appellee.

Before BUTTS, BIERY and CARR, JJ.

## OPINION

CARR, Justice[1].

This is an appeal from a judgment in a credit reporting case.

Appellee, Edward "Chip" Flatow ("Flatow") filed suit against Chemical Bank of New York ("Chemical"), American Express Travel Related Services Company, Incorporated ("American Express") and Lomas Bank USA ("Lomas"), seeking to recover for injuries allegedly caused by the defendants' negligent reporting of false credit information to credit reporting bureaus. Flatow subsequently settled with American Express. After a trial by jury, the court submitted issues upon Flatow's negligence claim against Lomas and Chemical only. The jury found that Chemical was seventy-five percent (75%) negligent, Flatow was fifteen percent (15%) negligent, and Lomas was ten percent (10%) negligent.

Based upon the jury's finding that Flatow had been damaged in an amount equal to $187,500.00, and granting a dollar credit for the American Express settlement, the trial court entered judgment in favor of Flatow against Chemical for $135,187.50 and against Lomas for $8,025.00.

After both Chemical and Lomas perfected their respective appeals to this Court, Chemical and Flatow reached an agreement to settle and compromise their differences; this court granted their agreed joint motion to dismiss Chemical's appeal and Flatow's cross-point against Chemical, leaving for our disposition only Lomas' appeal and Flatow's cross-point against Lomas.

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

2. Flatow also alleged that Lomas breached a contract to report his account "paid as agreed."

Flatow brought this suit against Lomas alleging that Lomas acted negligently in failing to accurately report Flatow's credit to certain credit reporting bureaus.[2] We hold that the rationale, principles of law, and holding of *Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896 (Tex.1970) apply to Lomas as a credit card company. Consequently, Lomas cannot be liable for mere negligent reporting to credit reporting bureaus because it was qualifiedly privileged to report information to credit reporting bureaus: There is no evidence that Lomas acted with malice in reporting any false information to credit reporting bureaus.

## QUALIFIED PRIVILEGE

Flatow erroneously contends that a qualified privilege only extends to credit reporting agencies and not to credit card companies that report to the credit reporting agencies. First, Flatow cites no Texas authority to support this argument. Second, the supreme court in *O'Neil* clearly stated that "'[i]f an individual* voluntarily or for profit *give false* and injurious *information to persons interested in the trade and commercial standing* of another at the time the information is given, such communications would be privileged....'" *Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, 898–99 (Tex.1970) (emphasis added). We do not read such language to be restricted to credit reporting agencies only. To the contrary, we believe the privilege should extend to the credit card companies who report and use the information, since absent any privilege to such providers, such providers would be discouraged from reporting information to the credit reporting agencies.

Also, contrary to Flatow's contention, the extension of the privilege to the credit card companies that report to the credit reporting agencies has been followed by courts in other jurisdictions. *See, e.g., Putnal v. Inman*, 76 Fla. 553, 80 So. 316, 319 (1918); *McDonald v.*

The trial court held that Flatow's contract action was barred against Lomas as a result of lack of consideration and Flatow has not appealed this ruling.

*Lee,* 246 Pa. 253, 92 A. 135, 136 (1914); *Woodhouse v. Powles,* 43 Wash. 617, 86 P. 1063, 1065 (1906). In *Putnal* the court explained

> In order that merchants may prudently do a credit business, it is expedient for them to know those in the community who meet their obligations promptly and those who do not, and they have the right to organize and enter into mutual agreements, for the purpose of giving each other the benefit of their knowledge on these subjects, and a communication made by a member of the association to the other members, is privileged, if made in good faith and in such a manner and on such an occasion as to properly serve the purpose of the association.

*Putnal,* 80 So. at 319.

■ It is established that Texas libel law requires a certain negligence standard when a private person seeks to prove a defendant is liable; the person cannot recover unless the publisher of the alleged libel knew or should have known the statement was false. Even then, if that proof is met by the plaintiff, the publisher may still have a qualified privilege under certain circumstances which will excuse the publication. *See Ramos v. Henry C. Beck Co.,* 711 S.W.2d 331, 335 (Tex.App.—Dallas 1986, no writ). A qualified privilege applies to communications made in good faith on any subject matter in which the author has an interest, or with reference to which he has a duty to perform to another person having a corresponding interest or duty. *Associated Tel. Directory Publishers, Inc. v. Better Business Bureau of Austin, Inc.,* 710 S.W.2d 190, 192 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.). However, the qualified privilege is lost if the communication was made with malice. *Id.* The plaintiff has the burden then to prove actual malice. *Dun & Bradstreet, Inc.,* 456 S.W.2d at 900.

Flatow cannot avoid this holding by merely declaring that his cause of action is for negligence and not for defamation. The jury's verdict, therefore, can only be sustained if there is evidence in the record that Lomas acted with malice. *See O'Neil,* 456 S.W.2d at 900.

## MALICE

■ In order to show actual malice, the statement must be made with knowledge that it was false, or with reckless disregard of whether it was true such that defendant entertained serious doubts as to the truth of the publication. *Carr v. Brasher,* 776 S.W.2d 567, 571 (Tex.1989). In the present case the jury was given a substantially similar definition of malice.

Although the jury did find that Lomas acted with malice, we conclude that there is no evidence in the record to support a finding because there is no evidence that Lomas published a false statement with actual knowledge that it was false or in reckless disregard of whether it was false or not, pursuant to the jury instruction.

■ In reviewing a "no evidence" point of error, the reviewing court must consider only the evidence and inferences tending to support the finding and must disregard all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458 (Tex.1992); *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex.1992); W. Wendell Hall, *Standards of Appellate Review and Civil Actions,* 21 ST. MARY'S L.J. 865, 906–07 (1990).

■ With the foregoing in mind, we note many of the facts, with respect to the Lomas transaction,[3] were undisputed at trial. In 1987, Allied American issued an unsecured credit card to Flatow with a credit line of $1,500.00. Almost immediately after the credit card became unsecured, Flatow incurred charges in excess of his credit line and stopped making payments. Flatow's credit account was subsequently acquired by Lomas. In February, 1988, his credit card was terminated and no future card was ever issued.

---

**3.** Since Chemical's appeal has been dismissed, we limit our review of the evidence in the record to the facts of the Lomas transaction.

Lomas' recovery manager, Joe Adams, testified that in June, 1988, after Flatow had made no payment for 240 days, Lomas was required to charge off his account pursuant to federal regulations. The amount due and owing at this time was $1,977.59. Flatow admitted that he owed this entire amount. In September, 1988, Flatow contacted Mr. Adams and offered to pay the Lomas balance owing and requested Mr. Adams to report the account "paid as agreed"; Mr. Adams agreed[4] that he would report the account "paid as agreed."

Flatow introduced four credit reports. Three of the credit reports reflected that Flatow's account with Lomas had been paid as agreed. The only credit report that contained Lomas' statement that Flatow's debt had not been "paid as agreed" was dated February 1, 1989, from the Credit Bureau of the Texas Hill Country. However, it is undisputed that Lomas' statements to the Texas Hill Country Credit Reporting Bureau that Flatow had not made payments upon the Lomas account for 240 days and that the account had been charged off was admittedly true when made. Accordingly, because Flatow failed to prove that the reported statements to the Credit Reporting Bureau as defined by the trial court in the charge to the jury on "malice," by Lomas regarding Flatow were false, we hold there is no evidence to show that Lomas acted with malice. *See Carr,* 776 S.W.2d at 571.

Accordingly, we grant Lomas' second point of error and need not address Lomas' other points or Flatow's cross-point.

The trial court's judgment is reversed and rendered that Flatow take nothing.

---

**4.** Mr. Adams' agreement to report Flatow's account as "paid as agreed" is the contract the trial court held was barred against Lomas as a result of lack of consideration.