Laura **RODRIGUEZ** d/b/a Fast Eagle Transport, Appellant,

v.

**NBC BANK, Eagle Pass, Texas; NCNB Texas National Bank, San Antonio, Texas; and NationsBank of Texas, N.A., Uvalde, Texas, Appellees.**

No. 04–98–00715–CV.

Court of Appeals of Texas, San Antonio.

Aug. 31, 1999.

Marcelo R. Montemayor, San Antonio, for Appellant.

Eric Lipper, Jeffrey J. Brookner, Hirsch & Westheimer, P.C., Houston, Roderick J. Regan, Matthews & Branscomb, P.C., San Antonio, Michael J. Bagley, Law Offices of Michael J. Bagley, Eagle Pass, for Appellees.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

Laura Rodriguez appeals the trial court's grant of summary judgment in favor of NationsBank on her breach of contract, tortious interference with a contract, and defamation claims. We affirm.

### I.

In August 1994, Laura Rodriguez entered into an oral agreement to haul freight with Robert Martinez, a Mexican national who was not authorized to do business in the United States. Martinez agreed to work in conjunction with Rodriguez, who would handle hauling within the United States, while Martinez would handle the hauling in Mexico. Martinez and Rodriguez agreed that each party would retain the proceeds of his or her respective hauling. Rodriguez represented herself as "Laura Rodriguez d/b/a Fast Eagle Transport" when applying for all necessary authority and fuel permits. Despite this, Martinez filed assumed name certificates on May 10, 1995 and December 18, 1995, invoking the name "Fast Eagle Transport Services."

### A. First Check

Rodriguez opened checking account no. 1240146928 in her name at NationsBank in Uvalde, Texas on August 9, 1995. To open the account, she used a check in the amount of $7800 payable to Fast Eagle Transport. This check, from a hauling client, was drawn on the client's Wells Fargo Bank account in California. Wells Fargo initially paid the check, but, upon receiving information from Martinez that the check had been stolen from him and that Rodriguez had forged the signature, Wells Fargo notified NationsBank that it would not honor the check and would seek reimbursement from NationsBank. Rodriguez's attorney sent NationsBank a letter advising it that Rodriguez and Martinez were in a dispute over the ownership of Fast Eagle Transport. NationsBank subsequently decreased Rodriguez's account by $7800.

### B. Second Check

Rodriguez deposited a check from Admon Grupo Industrial Monclova, S.A. de C.V. ("Admon") in the amount of $27,-667.81 into her checking account no. 307084536 at Camino Real Bank. A hold was initially placed on the funds, but Rod-

riguez was allowed to withdraw $21,000 after the hold was lifted. Two hours after the hold was lifted, the check, drawn on Admon's NationsBank account, was returned "unpaid" for insufficient funds. When Camino Real attempted to collect the funds from NationsBank, the allegation arose that the check was a forgery, and that the check was either a stolen or old check which had been issued to Fast Eagle Transport to effect the forgery. Camino Real successfully sued Rodriguez to recover the $21,000. A judgment was entered against Rodriguez in favor of Camino Real in 1996 for the $21,000 plus fees and costs.

Rodriguez filed suit against Martinez, as well as NBC Bank, NCNB Bank and its successor-in-interest, NationsBank (collectively, "NationsBank"), and Camino Real Bank, alleging breach of contract, conspiracy, libel and slander, and tortious interference with a contract.[1] NationsBank and NBC Bank successfully moved for summary judgment as to the sum of these claims and an order of severance was entered in favor of all the banks.

On appeal, Rodriguez pursues the following claims against NationsBank: as to the first check, breach of depository contract and tortious interference with a contract; and, as to the second check, libel and slander. She has dismissed her claims against NBC on appeal and has abandoned or waived the remainder of her claims against NationsBank on appeal.

## II.

Rule 166a(i) allows a litigant to move for summary judgment as to all or part of a lawsuit on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex.R. Civ. P. 166a(i). A no-evidence summary judgment is the functional equivalent of a pretrial directed verdict, so we employ the same legal sufficiency standard when reviewing a no-evidence summary judgment as we do when reviewing a directed verdict. *Graves v. Komet*, 982 S.W.2d 551, 553 (Tex.App.—San Antonio 1998, n. pet. h.); *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied.). We review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); *Graves*, 982 S.W.2d at 553. A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. Tex .R. Civ. P. 166a(i); *see also Merrell Dow*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983); *Graves*, 982 S.W.2d at 553. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow*, 953 S.W.2d at 711.

Alternatively, Rule 166a(b) permits a defending party to seek dismissal of a claim at any time. Tex.R. Civ. P. 166a(b). When reviewing the grant of a summary judgment, we follow these well-established rules: (1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the

---

1. Rodriguez nonsuited Camino Real after it moved for summary judgment asserting res judicata.

non-movant and any doubts must be resolved in favor of the non-movant. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997) (citing *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985)).

### A. JURISDICTION

NationsBank argues that Rodriguez has failed to timely perfect her appeal, and this court lacks jurisdiction to consider the merits of her appeal. NationsBank argues that the inclusion of the Mother Hubbard clause in the summary judgment rendered the summary judgment a final judgment as to all claims and all parties.

If the severance order starts the appellate timetable, the appeal is timely. But if the granting of the first summary judgment started the appellate timetable, the appeal is untimely. NationsBank argues that the latter is the case and therefore

the matter is at an end for all defendants, even those who were not before the court on NationsBank's motion for summary judgment.

The Texas Supreme Court has held that if a summary judgment order appears to be final, as evidenced by the inclusion of language purporting to dispose of all claims or parties, the judgment should be treated as final for purposes of appeal. *Mafrige v. Ross*, 866 S.W.2d 590, 592 (Tex. 1993). In *Mafrige*, the summary judgment contained a "Mother Hubbard" clause purporting to dispose of claims not raised in the motion for summary judgment.[2] *Id.* *Mafrige* held that "if the judgment grants more relief than requested, it should be reversed and remanded, but not dismissed [for want of jurisdiction over the claims not presented in the motion for summary judgment.]"[3] *Id.*

2. The instant case presents a different jurisdictional challenge than *Mafrige*—not whether we have jurisdiction to address the merits of the claim because the trial court granted relief on more claims than were before the court on summary judgment motion, but whether this Court lacks jurisdiction because Rodriguez did not timely perfect her appeal from the summary judgment.

3. *Mafrige* is not without its critics. Our sister court aptly explained the pitfalls of the *Mafrige* rule in *Lehmann v. Har–Con Corp.*, saying:

The supreme court has deemed summary judgment orders granting more relief than requested to be, not interlocutory, but, final and erroneous. This case demonstrates the unfairness of the rule. Here, only one of two defendants moved for summary judgment. The second defendant, not having moved for summary judgment, would not be entitled to judgment under our summary judgment rule. See Tex.R. Civ. P. 166a. Yet, under the "bright line rule" established in *Mafrige* and *Inglish*, the second defendant was able to get a judgment 1) that it did not ask for and 2) to which the Lehmann's did not have an opportunity to respond. This is unfair. And, it seems to contradict the high standard set out in Rule 166a(b) for obtaining a summary judgment. *See id.* It exalts form over substance. Moreover, it mandates a final judgment

when neither the parties nor the trial judge contemplated one.

Another problem exists. *Mafrige* is not as clear to litigants as the supreme court believes it is. For example, what if the summary judgment is entitled "Interlocutory Judgment," states in the judgment itself that only one of the defendants has moved for relief, and yet the judgment contains a Mother Hubbard Clause? To further complicate the issue, what if more than one plaintiff is involved in the litigation and is not a target of the motion? Common sense and the former rule would say that the judgment was interlocutory. But, *Mafrige*, very arguably, says it would be final. In short, *Mafrige* has created several problems: 1) it is catching the parties by surprise—we have had more than a few appeals dismissed on the basis of *Mafrige*; 2) it exalts form over substance; and 3) in more than a few situations, it ignores common sense.

Under *Mafrige* and its progeny, the mere presence of the Mother Hubbard clause transforms an otherwise interlocutory summary judgment into a final judgment. Our emphasis should not be on the form of the judgment. Rather, our emphasis should be to seek the truth. The truth lies, not in the form, but in the substance of the summary judgment motion and response, together with evidence of the intent of the parties and the court.

If *Mafrige* remains the law, parties to a summary judgment proceeding should nev-

NationsBank argues that the time for appeal ran from the entry of the summary judgment in favor of NationsBank, not the order of severance from which Rodriguez's appeal would be timely, citing *Inglish v. Union State Bank*, 945 S.W.2d 810, 811 (Tex.1997). *Inglish* holds that a nonmovant is required to either ask the trial court to correct the summary judgment containing the Mother Hubbard language while the trial court retains plenary power or to perfect a timely appeal in order to preserve the appellate court's jurisdiction over the case. *Id.*

■ In determining the finality of a judgment for appellate purposes, the dispositive question is what the order, taken as a whole, purports to do. *Hervey v. Flores*, 975 S.W.2d 21, 25 (Tex.App.—El Paso 1998, pet. denied). The intent contained in the order, as manifested in its language, must embrace all claims and all parties. *Id.* If an otherwise outstanding claim logically cannot be brought within the grasp of the Mother Hubbard clause, the order is interlocutory. *Id.; see also Harris County Flood Control District v. Adam*, 988 S.W.2d 423, 427 (Tex.App.—Houston [1st Dist.] 1999, n. pet. h.) (finding that, despite Mother Hubbard language, narrowly-defined severance order did not operate to create final and appealable judgment as to *all* parties and claims;

rather, it merely created final and appealable judgment as to *severed* parties and claims) (emphasis added); *Sheerin v. Exxon Corp.*, 923 S.W.2d 52, 55 (Tex.App.-Houston [1st Dist.] 1995, no writ) (finding trial court's "clear intent" was for order to be interlocutory, not final, despite Mother Hubbard clause); *Vanderwiele v. Llano Trucks, Inc.*, 885 S.W.2d 843, 845 (Tex. App.-Austin 1994, no writ) (holding that appeal was timely perfected because challenged order expressly referenced motion for summary judgment of only one party, granted that motion, and ordered that appellants take nothing against only that party). *But see Lehmann v. Har–Con Corp.*, 988 S.W.2d 415, 418 (Tex.App.-Houston [14th Dist.] 1999, n. pet. h.)(despite unfairness, holding that court is "compelled by supreme court precedent even where, as here, the parties and court clearly considered the summary judgment interlocutory" to find judgment final and, thus, appeal was untimely); *Kaigler v. General Elec. Mortgage. Ins. Corp.*, 961 S.W.2d 273, 276 (Tex.App.-Houston [1st Dist.] 1997, no writ) (despite harsh consequence, finding that appeal from summary judgment was untimely where summary judgment contained Mother Hubbard clause).

■ Like the summary judgment orders in *Harris County Flood District,*

---

er use a Mother Hubbard Clause. For, by using a Mother Hubbard Clause, they may inadvertently dismiss parties and/or causes of action never addressed or intended to be addressed in the motion. If *Mafrige* remains the law, even parties who were not the subject of a motion for summary judgment must scrutinize summary judgments to ensure that they do not contain a Mother Hubbard clause. The failure to do so, even when a motion for summary judgment was not filed against them, may mean that they find their cause of action gone. 988 S.W.2d 415, 417–18 (Tex.App.-Houston [14th Dist.] 1999, n. pet. h.); *see also Harris County Flood Control District v. Adam*, 988 S.W.2d 423, 427–28 (Tex.App.-Houston [1st Dist.] 1999, n. pet. h.)(Taft, J., concurring)(observing that "[w]hat began as a benign growth allowing review of unripe claims on appeal, in *Mafrige*, became a malignant can-

cer cutting off causes of action before trial, in *Inglish*. If it were up to me, I would lock Mother Hubbard in the cupboard and return to the rule before *Aldridge* that a judgment is final and appealable only if it expressly disposes of all parties and all claims in the case. That appellants can even cite authority for the absurd result they seek illustrates how wrong a turn the law has taken in this area—and how strong the need to right it;"*Harris County Flood Control District*, 988 S.W.2d at 428)(Wilson, J., concurring)(warning that, "[b]y the narrowest of margins, the latent danger in *Kaigler* has been narrowly averted in this case … [*Kaigler*] does not follow *Mafrige* and *Inglish* as it purports to do, and, in fact, dramatically alters longstanding law. The near miss of unjustly terminating the causes of action of over 200 plaintiffs in this case should be ample warning, but apparently it is not.")

*Sheerin* and *Vanderwiele,* the summary judgment order in the instant case recites that, on February 20, 1998, the motion of NationsBank (and its predecessor-in-interest, NCNB Bank) was before the court seeking summary judgment on all claims by and between Laura Rodriguez and NationsBank. The trial court expressly ruled that Laura Rodriguez "take nothing on her claims against Defendants, NCNB Texas National Bank, San Antonio, Texas and NationsBank of Texas, N.A., Uvalde" and that Rodriguez "pay NCNB Texas National Bank, San Antonio, Texas and NationsBank of Texas, N.A., Uvalde the amount of $6250.00 plus expenses as reasonable attorney's fees and court costs incurred in litigating this matter." The order concluded "All relief not expressly granted herein is denied."

This phrase "All relief not expressly granted herein is denied" is not free from ambiguities. The question is what does "herein" refer to? One interpretation is that the phrase refers to the latest Plaintiff's petition and therefore wipes out all causes of action against all parties. This is the argument advanced by NationsBank.[4]

But, a more logical interpretation is that it refers to the motion being relied on and therefore applies to the movant, not the respondent. "Herein" refers to the motion and the interpretation is to be made by referencing the four corners of the document. In this case, NationsBank asked for and was granted a summary judgment in its favor and a certain amount of attorneys' fees. This was the entirety of their relief—"expressly granted." Any other relief to the movant that had not been expressly granted was denied.

This interpretation makes infinitely more sense. The nonmovant was not asking for any relief in the motion "herein," nor were any of the other parties to this lawsuit. The other defending parties were not even before the court on this motion.[5] Surely the trial court's ruling is limited to the parties who are before it on this motion.

We find that the words "All relief not expressly granted herein is denied" in the summary judgment order apply *only* to *NationsBank's* requests for relief. Looking within the four corners of the summary judgment order, the plain language of the Mother Hubbard clause did not, and could not, purport to grant or deny any more relief than the relief which NationsBank sought.[6] *See Hervey,* 975 S.W.2d at 25.

4. NationsBank's argument is also inconsistent with the supreme court's express goal of reaching the merits of a cause of action, instead of dismissing actions on procedural technicalities. *See Dallas Market Center Development Co. v. Liedeker,* 958 S.W.2d 382, 387 (Tex.1997)(finding that restricting means of preserving error, when court's ruling on objection is otherwise clear from record, "would promote form over substance and be ill-advised"); *see also State Dept. of Highways & Public Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992) (holding that "rules changes must await the completion of that process; we do not revise our rules by opinion").

5. Under well-established summary judgment rules, a party cannot obtain a summary judgment against an adverse party without notice and an opportunity to respond. Tex.R.App. P. 166a.

6. Like NationsBank in the instant case, the appellants in *Hervey* argued that the summary judgment was final as to a counterclaim and a motion for sanctions, even though these issues were not raised in the summary judgment motion or expressly addressed by the trial court, by virtue of the Mother Hubbard language. *Hervey* rejected this argument, explaining:

> No attempt to deal with these issues [counterclaim and motion for sanctions] may be gleaned from the language of either order. To hold otherwise would require us to stretch beyond all reason the language of these orders, and in particular, the Mother Hubbard clause of the June 23 order. It is difficult to believe that the words "[a]ll relief requested" contained in the Mother Hubbard clause encompasses Sherleen's counterclaim and motion for sanctions when neither the clause nor the order to which it was attached makes any reference to Sherleen or her claims. Thus, the sum of the relief granted in the orders, though granting no more relief than requested in the motions for summary judgment, is naturally less than the issues raised in the lawsuit.

Neither the language of the order granting summary judgment nor the order of severance[7] evidence the trial court's "clear intent" that the summary judgment granted in favor of NationsBank be final as to *all* parties to the litigation. *See Mafrige,* 866 S.W.2d at 592. To the contrary, the orders clearly show that the trial court considered the summary judgment to be interlocutory, disposing only of those claims by and between Rodriguez and NationsBank. The trial court's intent that the order be interlocutory is further evidenced by its subsequent actions in granting NBC Bank's motion for summary judgment and entry of a severance order at a later date.

We find that the order granting summary judgment in favor of NationsBank was interlocutory, and Rodriguez perfected a timely appeal from the order of severance. "To hold otherwise would require us to stretch beyond all reason the language of these orders, and in particular, the

*Hervey,* 975 S.W.2d at 25.

7. The order of severance, entered May 20, 1998, says that the claims involving the banks are ordered severed from the "remainder of the original action in the above-referenced case, and that a separate cause number and docket shall be established so that said claim can be docketed as an independent action."

8. The supreme court has previously said that the interest in the finality of judgments does not outweigh the policy of disposing of appeals on their merits. *See Verburgt v. Dorner,* 959 S.W.2d 615, 616–617 (Tex.1997). The dissent would have this court employ the procedural fiction created in *Mafrige* with regard to the finality of judgments, and thereby avoid reaching the merits of this appeal. Even under *Mafrige,* the merits of the claims that are not properly before the trial court when a summary judgment is entered are not left unaddressed. Rather, they are sent back to the trial court for their determination. *See Bandera Elec. Co-op., Inc. v. Gilchrist,* 946 S.W.2d 336, 336 (Tex.1997).

*Mafrige* is distinguishable from this case on its procedural facts. In *Mafrige,* the appellate courts were trying to determine how to handle an appeal that was filed after a summary judgment was entered where the proper judgment was interlocutory. The *Mafrige* court held that under those procedural circum-

Mother Hubbard clause [of the summary judgment order.]" *See Hervey,* 975 S.W.2d at 25. This court is vested with jurisdiction to consider the merits of the appeal, which we now consider.[8]

### B. BREACH OF DEPOSITORY CONTRACT

■ Rodriguez asserts that summary judgment was improper because she raised a genuine issue of material fact on her claim that NationsBank breached its depository contract. She points out that the check drawn on Wells Fargo Bank was not returned unpaid. NationsBank responds that once it was notified by Wells Fargo that the check had been paid over an unauthorized endorsement, it became liable to Wells Fargo for that amount. NationsBank argues it was entitled to deduct from Rodriguez's account for reimbursement because she breached her presentment warranties under section 4.207 of the Texas Business & Commerce Code.

stances, if the summary judgment contains a Mother Hubbard clause, we treat the judgment as final for purposes of that appeal. *Mafrige* did not hold that the failure to bring an appeal at that juncture thereafter cuts off the unaddressed claims where the parties and the trial court recognize that the proper judgment was a partial summary judgment.

In other words, if the appeal is brought, even though the only proper judgment the trial court could have entered was an interlocutory judgment, then *Mafrige* teaches us to engage in a legal fiction and treat it as final, if the summary judgment contains a Mother Hubbard clause, and exercise jurisdiction over the appeal. We are to address the merits of the claims that were properly before the trial court. However, if an appeal is not brought, because the parties recognize that the only proper judgment the trial court could have rendered was a partial summary judgment, we need not invoke the legal fiction established in *Mafrige* to "avoid the needless relitigation of decided issues and thus promote judicial economy." *Bandera Elec. Co-op., Inc.,* 946 S.W.2d at 337. Where the parties recognize the true state of the case and do not bring an appeal before a proper final judgment is rendered, we are not required to invoke a legal fiction. We only consider the appeal if it is properly brought after the rendition of a true final judgment. This promotes judicial economy and provides fairness to the parties.

In pertinent part, the NationsBank depository agreement provides:

4. *Deposits*

    *a. Items Deposited.* We may refuse, accept for collection only, or return all or part of any deposit. Credit for an item deposited is provisional and subject to revocation if the item is not paid for any reason. No item in the deposit shall be deemed finally paid because a portion of the deposit is deducted and withdrawn in cash.

    *b. Verification of deposits.* When we accept deposits and issue receipts, such deposits and receipts are subject to subsequent verification and correction if necessary.

    *e. Items Returned.* If a deposited item is returned to us unpaid, we will reverse the credit to your account. At our option and without notice to you that the item has been returned, we may resubmit any returned item for payment. You waive presentment, notice of dishonor and protest.

NationsBank received notice of dishonor from Wells Fargo bank, albeit after initial payment of the amount. NationsBank then became indebted to Wells Fargo Bank as the agent of Rodriguez. *See* TEX. BUS. & COMMERCE CODE ANN. § 4.201 (Vernon 1994) (collecting bank acts as agent for owner of item).

The dispositive question for purposes of the breach of contract claim is whether either provision—"Credit for an item deposited is provisional and subject to revocation if the item is not paid for any reason" or "If a deposited item is returned to us unpaid, we will reverse the credit to your account"—authorized NationsBank to debit her account. Specifically, the question is whether Wells Fargo's initial payment but later recission of that payment constitutes "not paid" or "unpaid" under the terms of the agreement. Rodriguez

does not cite to any cases in support of her position that once the check was initially paid, NationsBank no longer had a right to debit her account.

On summary judgment, NationsBank brought forward the evidence presented to it by Wells Fargo demonstrating Wells Fargo's reason for dishonoring the check. NationsBank acted within its agreement in debiting Rodriguez's account upon notice of dishonor under the provision "[c]redit for an item deposited is provisional and subject to revocation if the item *is not paid for any reason.*" We do not find any genuine issue of material fact as to whether NationsBank was entitled to debit once its provisional payment was revoked. While Rodriguez may have a potential claim against Wells Fargo Bank for wrongful dishonor, there is no factual dispute under the agreement or the Texas Business & Commerce Code as to NationsBank's liability.[9]

## C. TORTIOUS INTERFERENCE WITH A CONTRACT

■ Rodriguez argues that the NationsBank's employee's actions in offsetting her account amounted to tortious interference with her hauling contract with Martinez.

■ The failure to perform the terms of a contract is a breach of contract, not a tort. *Bank One, Texas, N.A. v. Stewart,* 967 S.W.2d 419, 447 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). A knowing and intentional breach of one's contract, however, may be an act of tortious interference with a third party's contract if the breach has the purpose and effect of preventing the third party from performing its contract with another. *American Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Corp.,* 798 S.W.2d 274, 279 (Tex.1990). A party alleging tortious interference must prove four

---

9. A contrary result would mean that if a party did not discover the theft or forgery until after a check had been paid (which is most likely when the forgery or theft will first be noticed and complained-of), the wrongdoer could never be held accountable under the terms of the agreement.

elements to sustain its claim: (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) interference that proximately caused damage; and (4) actual damage or loss. *Powell Industries, Inc. v. Allen,* 985 S.W.2d 455, 456 (Tex.1998). Even if the plaintiff proves a tortious interference, the defendant may still prevail if it establishes the affirmative defense of justification. *Friendswood Dev. Co. v. McDade + Co.,* 926 S.W.2d 280, 282 (Tex.1996). A party is justified in interfering with another's contract if it exercises (1) its own legal rights or (2) a good faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken. *Id.*

Assuming without deciding that an action for tortious interference would lie in addition to a breach of contract claim, there is no evidence in this record that NationsBank purposefully injected itself into the ownership dispute between Martinez and Rodriguez. NationsBank acted according to its depository agreement and its responsibilities to Wells Fargo Bank without regard to the dispute between Rodriguez and Martinez. We find that there is no evidence that NationsBank acted other than with regard to its own legal rights and responsibilities.

### D. Libel and Slander

■■■ Rodriguez argues that NationsBank's employee Kenneth Bonnet's notes pertaining to his conversation with Hector Serna of Camino Real Bank that the $27,667.81 check was stolen or forged constitute libel and slander per se. A libel is a defamation expressed in written or other graphic form that tends to injure a

living person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury, or to impeach any person's honesty, integrity, virtue, or reputation. *See* Tex. Civ. Prac. & Rem.Code Ann. § 73.001 (Vernon 1997). Slander is a defamatory statement that is orally communicated or published to a third person without legal excuse.[10] *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995). Whether words are capable of a defamatory meaning is a question of law for the court. *Musser v. Smith Protective Services, Inc.,* 723 S.W.2d 653, 654–55 (Tex.1987); *San Antonio Express News v. Dracos,* 922 S.W.2d 242, 248 (Tex.App.-San Antonio 1996, no writ). The court must construe a statement alleged to be defamatory as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement. *Musser,* 723 S.W.2d at 655; *Dracos,* 922 S.W.2d at 248. A jury may only be called upon to determine a statement's meaning and the effect of its publication on an ordinary reader if the court initially determines that the language is ambiguous or of doubtful import. *Musser,* 723 S.W.2d at 655; *Dracos,* 922 S.W.2d at 248.

■■■ There is no evidence that the NationsBank employee's notes were ever published to any third party. Summary judgment is proper as to the libel claim. Similarly, NationsBank asserts that there was no competent evidence of slander. The only evidence of slander Rodriguez introduces is notes of a telephone conversation between a NationsBank employee

10. The truth of a statement on which a defamation action is based is a defense to the action. Tex. Civ. Prac. & Rem.Code Ann. § 73.005 (Vernon 1997). A showing of substantial truth at a summary judgment hearing will defeat a defamation claim. *McIlvain v. Jacobs,* 794 S.W.2d 14, 15 (Tex.1990); *Dracos,* 922 S.W.2d at 249. Also, a conditional or qualified privilege applies to communications made in good faith on any subject matter in which the author has an interest, or

with reference to which he has a duty to perform to another person having a corresponding interest or duty. *Lomas Bank USA v. Flatow,* 880 S.W.2d 52, 54 (Tex.App.-San Antonio 1994, writ denied). Whether a conditional or qualified privilege exists is a question of law for the court. *Calhoun v. Chase Manhattan Bank (U.S.A.), N.A.,* 911 S.W.2d 403, 408 (Tex.App.-Houston [1st Dist.] 1995, no writ).

and a Camino Real employee. She does not introduce the testimony of either employee to the effect of their conversations. While Rodriguez relies on these notes as evidence of the slanderous statements being made, NationsBank asserts that the notes were merely a NationsBank employee's record of the *Camino Real* employee's statements. We find these notes are not probative evidence of a NationsBank employee making slanderous statements. Since there is no probative evidence of slander, the trial court was correct in granting summary judgment.

■ Finally, NationsBank asserts that res judicata or collateral estoppel should bar the defamation claims as to this check because this check was the subject of prior litigation, where NationsBank claims Rodriguez should have brought the claim.

■ Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex.1992); *Gracia v. RC Cola–7–Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex.1984). Issue preclusion, or collateral estoppel, prevents relitigation of particular issues already resolved in a prior suit. *Barr*, 837 S.W.2d at 628.

In the prior lawsuit, Camino Real brought suit against Laura Rodriguez seeking recoupment of the $21,000 she withdrew against the check that was later dishonored. NationsBank was not a party to that litigation, nor were issues of libel or slander litigated against any party in that lawsuit. While the prior litigation centered around the same check in dispute, Rodriguez was not required to bring in NationsBank as a third-party defendant to litigate the libel issue. We find that the prior lawsuit did not bar her libel claim in the instant case.

## III.

We affirm the trial court's granting of summary judgment.

Dissenting Opinion by: PAUL W. GREEN, Justice.

Dissenting Opinion by: PAUL W. GREEN, Justice.

In my opinion, this appeal must be dismissed for lack of jurisdiction because appellant failed to timely perfect an appeal. The February 20, 1998 summary judgment order disposed of all parties and claims by the inclusion of a Mother Hubbard clause. A timely motion for new trial was filed, so appellant had a total of 105 days from the date of the order, or until June 5, 1998, to perfect an appeal. However, no attempt was made to perfect an appeal until August 19, 1998, when appellant filed a cash bond. Since the cash bond was filed seventy-five days late, the court lacks jurisdiction to consider this appeal.

The majority instead concludes the Mother Hubbard language is ambiguous and interprets it as providing relief only to the movant, rather than to all parties and claims. This interpretation renders the February 20 order interlocutory and, because of a later severance, the appeal would be timely. The majority's holding is, however, in conflict with relevant decisions of the supreme court. Consequently, I respectfully dissent.

The supreme court has made it clear that the use of Mother Hubbard language in a judgment expresses the intent to make it a final judgment. In *North East Independent School District v. Aldridge*, 400 S.W.2d 893 (Tex.1966), the supreme court dealt with the "recurring and nagging problem" of the finality of judgments and concluded that a judgment rendered after a conventional trial on the merits would be presumed to dispose of all parties and claims, and went further to suggest language to use in a judgment that would avoid any confusion. *Id.* at 898. ("[T]he problem [of finality] can be eliminated en-

tirely [ ] by inclusion in judgments of a simple statement that all relief not expressly granted is denied."). The use of Mother Hubbard language to determine the finality of judgments has since expanded into summary judgment proceedings.

In *Schlipf v. Exxon Corp.*, 644 S.W.2d 453, 454–55 (Tex.1982), the trial court granted Schlipf's motion for summary judgment on his claim for retained royalties, but his claim for prejudgment interest was denied. The summary judgment order included Mother Hubbard language. Both parties appealed. On appeal, an intervenor moved to dismiss all appeals for lack of jurisdiction on the basis that the summary judgment did not dispose of Schlipf's prejudgment interest claim, making it an unappealable interlocutory partial summary judgment. But the supreme court held the summary judgment order was a final, appealable judgment because it "expressly disposed of all parties and issues in the case" by use of the language suggested in *Aldridge.*

More recently, in *Mafrige v. Ross*, 866 S.W.2d 590 (Tex.1993), the supreme court said:

> If a summary judgment order appears to be final, *as evidenced by the inclusion of language purporting to dispose of all claims or parties*, the judgment should be treated as final for purposes of appeal.

866 S.W.2d at 592. (emphasis added). In *Mafrige*, Ross and Sutter sued twelve parties on various causes of action. Several, but not all, of the defendants filed motions for summary judgment. The trial court granted the motions by separate orders, indicating that "the Motion for Summary Judgment of Defendant ... should in all things be granted and that Plaintiff ... take nothing against Defendant." Ross and Sutter appealed. The court of appeals dismissed for lack of jurisdiction on the basis that the judgments were interlocutory, failing to dispose of all parties and claims. The supreme court reversed and remanded, holding the language in the order that "Plaintiff ... take nothing against Defendant" was a Mother Hubbard equivalent that "clearly evidence[d] the trial court's intent to dispose of all claims."

The message cannot be more clear. If there is language purporting to dispose of all claims or parties, the judgment is to be treated as a final judgment, even if the trial court was plainly in error in purporting to render a final judgment. The rule is obviously intended to provide a meaningful way of determining when a judgment is final for appeal purposes. The application of the rule can sometimes be harsh, as in this case. But no one has been misled as to the consequence of using Mother Hubbard or equivalent language in a judgment or order. The warnings have been there for those who would look. *See Mafrige*, 866 S.W.2d at 592 (Mother Hubbard clause has no place in partial summary judgment order); *Teer v. Duddlesten*, 664 S.W.2d 702, 704 (Tex.1984) (same); and *Schlipf*, 644 S.W.2d at 455 (judgment drafted in form of final judgment).

It is the responsibility of the parties to prepare, and of the trial court to sign, a judgment that does no more than what is intended. Words and phrases have meaning and we are not free to disregard what plain English expresses as the intention of the parties.

The majority labors to distinguish this case to avoid the harshness of the *Mafrige* rule, but it cannot honestly be done. The case should be dismissed for lack of jurisdiction. Because the majority addresses the merits, I respectfully dissent.