NUMBER 13-02-659-CV

COURT OF APPEALS
 
THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG




GILBERT WEISBERG AND SUSY WEISBERG,                      Appellants,

v.

NORA LONDON,                                                                Appellee.




On appeal from the 404th Judicial District Court
of Cameron County, Texas.




MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Hinojosa and Castillo

Memorandum Opinion by Justice Castillo

         This is a case alleging intentional infliction of emotional distress and defamation. 
Appellants Gilbert and Susy Weisberg (the "Weisbergs") challenge the trial court's
summary judgment in favor of Nora London ("London"). We affirm. 
I. JURISDICTION
         On December 4, 2001, the Weisbergs sued London for intentional infliction of
emotional distress. They alleged that they resigned as members of Temple Emanuel
in McAllen, Texas in May of 2001 because of philosophical differences regarding the
treatment of less fortunate members of their community. They applied for membership
at Temple Beth El in Brownsville, Texas. London, as treasurer of Temple Emanuel,
informed Temple Beth El, in response to its inquiry, that the Weisbergs were not in
good standing with Temple Emanuel when they resigned. 
         The Weisbergs claimed that the statement was false, asserting that they had
paid all current Temple dues and assessments before they resigned. They asked
London to retract the statement. She refused. The Weisbergs alleged Temple Beth
El initially refused them membership based on the information provided by London. 
The Weisbergs claimed that London's false statement caused them extreme emotional
distress. 
         On May 17, 2002, the Weisbergs filed their first amended petition, alleging
substantially the same facts and adding a defamation cause of action. London filed
a traditional motion for summary judgment on both the intentional-infliction and
defamation claims on July 2, 2002. On July 8, 2002, the trial court set the hearing
on the motion for summary judgment for August 8, 2002. On August 5, 2002, the
Weisbergs responded to the motion for summary judgment. They filed a second
amended petition the same day. In addition to the intentional-infliction and defamation
causes of action, the second amended petition added a claim for declaratory relief and
attorney fees. 
         The trial court held a hearing on London's summary-judgment motion on
August 8, 2002. On August 9, 2004, both the Weisbergs and London filed post-hearing letters and additional summary-judgment affidavits. The trial court signed an
"Order Granting Defendant's Motion for Summary Judgment" on August 20, 2002
(the "Order"). 
         Our initial inquiry is always whether we have jurisdiction over an appeal. Tex.
Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993); Garcia v.
Comm'rs Court of Cameron County, 101 S.W.3d 778, 779 (Tex. App.–Corpus Christi
2003, no pet.). We are obligated to determine, sua sponte, our own jurisdiction. N.Y.
Underwriters Ins. Co. v. Sanchez, 799 S.W.2d 677, 678 (Tex. 1990) (per curiam);
Garcia, 101 S.W.3d at 779. Unless one of the sources of our authority specifically
authorizes an interlocutory appeal, we only have jurisdiction over an appeal taken from
a final judgment. Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195 (Tex. 2001);
Garcia, 101 S.W.3d at 784. Absent an express grant of authority, we do not have
jurisdiction to review an interlocutory order. Steeple Oil & Gas Corp. v. Amend,
394 S.W.2d 789, 790 (Tex. 1965) (per curiam); see Tex. Civ. Prac. & Rem. Code
Ann. § 51.014 (Vernon Supp. 2004). If the record does not affirmatively demonstrate
our jurisdiction, we must dismiss the appeal. Garcia, 101 S.W.3d at 786.
         An order or judgment is not final for purposes of appeal unless it actually
disposes of every pending claim and party or unless it clearly and unequivocally states
that it finally disposes of all claims and parties. Lehmann, 39 S.W.3d at 205. In this
case, after reviewing the Order and the record, we were uncertain about the trial
court's intent in signing the summary-judgment order. Concluding that clarification did
not require more than the determination of perfunctory issues that could be cured by
a modified order, this Court abated the appeal. See Garcia, 101 S.W.3d at 785 (citing
Lehmann, 39 S.W.3d at 196).


 Pursuant to rule 34.5(c)(1), we requested
supplementation of the record to include (1) an order that clarified the trial court's
intent with regard to finality and identified what summary-judgment materials the trial
court considered in granting summary judgment, and (2) all proceedings relating to the
modification of the order. See Tex. R. App. P. 27.2, 34.5(c)(1). 
         After remand, the trial court supplemented the record with a clarified order,
including the following findings:
(a)The Second Amended Original Petition was not timely filed, no
request for leave to file [it] was made or granted, and it was not
considered; 
 
(b)The Court did consider [Plaintiffs] Response to Defendant's motion
for Summary Judgment and the exhibits attached to it; and
 
(c)The affidavit of Rabbi Cohen was not considered;
 
(d)The Court did consider the remaining affidavits and exhibits
submitted by [Plaintiffs] August 8, 2002, letter brief to the Court
and by Defendant's August 9, 2002, letter brief to the Court; and
 
(e)The Order signed August 20, 2002, was intended to dispose of all
claims between all parties and was intended to be a final and
appealable judgment. 

         We review the summary judgment accordingly. 

II. FACTUAL BACKGROUND

         Under the bylaws of Temple Emanuel, its members paid both regular dues and
special assessments. It is undisputed that the Weisbergs paid the entirety of their
dues for the fiscal year 2000 - 2001. At issue in this case, however is a special
assessment that the Temple's congregation approved at a meeting on March 21,
2001. The Weisbergs attended this meeting but left before the special assessment
was voted on and passed by the Temple's membership. The Weisbergs received a
letter dated April 1, 2001 from the Temple budget committee stating that the
assessment was due by June 30, 2001. On May 1, 2001, the Weisbergs resigned
from Temple Emanuel without paying the special assessment. According to the
Temple bylaws, "Resignation of any member shall not relieve him from the payment
of any obligation due the congregation at the time of resignation." 
         In July 2001, the Weisbergs met with London and board member Larry Safir,
who attempted to convince the Weisbergs to return to Temple Emanuel. Mr. Weisberg
told London he would think about returning and would let her know his decision at a
later time. In August, Mr. Weisberg told London the Weisbergs would not return. 
That same month, the Weisbergs submitted an application for membership to Temple
Beth El. 
         Temple Beth El has a policy or practice of determining whether applicants left
their former places of worship in "good standing," which refers to the applicants'
financial standing. Gay Greenspan, the administrator of Temple Beth El, testified by
affidavit she had made numerous inquiries regarding applicants' standing at their
former places of worship throughout the United States. She also had responded to
many requests for similar information from Temple Beth El. 
         On receipt of the Weisbergs' application for membership in Temple Beth El,
Greenspan called Temple Emanuel and asked to speak to the treasurer. She was
referred to London. Greenspan asked London if the Weisbergs were in good standing
with Temple Emanuel. London told her that they were not in good standing. They had
neither paid the assessment nor had they made alternative payment arrangements with
the Temple's board. According to London's affidavit, the Temple Emanuel's board
authorize the waiver of payments or specialized payment plans. If the Weisbergs had
requested, they could have made other arrangements. However, the Weisbergs did
not do so. Therefore, they were not members in good standing. 
         Meanwhile, Temple Beth El informed the Weisbergs of the difficulty with their
application. The Weisbergs asked for another meeting with London and Safir. Mr.
Weisberg and his daughter, Monica, met with London and Safir on September 10,
2001. They asked London to retract her statement. London told them she could not
retract her statement without board approval. Monica asked that London call an
emergency board meeting. London told her that Temple bylaws did not authorize her
to call an emergency meeting. However, London explained, the regular board meeting
was set the following week. 
         That same day, pursuant to Greenspan's request for written confirmation that
the Weisbergs were not in good standing, London sent Greenspan a fax stating that
a special assessment had been issued in March 2001 that the Weisbergs had not paid. 
The letter further described the Weisberg's viewpoint that they did not owe it because
they resigned their membership with the Temple before the due date of the
assessment of June 30, 2001.
         Temple Beth El's board met on September 12, 2001. Meanwhile, the High Holy
Days of the Jewish religious calendar, the most significant holidays of the Jewish
religion, approached. Non-members and members who are not in good financial
standing may not attend High Holy Day services. No longer members of Temple
Emanuel, the Weisbergs could not attend services there. Their application for
membership in Temple Beth El had not yet been approved because of the report from
London they were not in good standing at Temple Emanuel. However, Temple Beth
El's custom permitted the Weisbergs to pay to attend the High Holy Day services as
visitors. The Weisbergs asked that they be allowed to do so, with their payment to
be credited toward their dues if they were ultimately accepted as members of the
Temple. Temple Beth El's board agreed. The Weisbergs attended High Holy Days at
Temple Beth El. However, they did not feel comfortable or welcomed. 
         Temple Beth El requested additional information regarding the Weisbergs from
Temple Emanuel's board. Martin Morris, Temple Emanuel's secretary, responded with
a letter stating that the Weisbergs had paid their dues for fiscal year 2000 - 2001 in
full. He explained the history of the additional assessment. The letter specifically
stated that the assessment occurred in March of 2001 with a due date for payment
at the end of June of 2001. The letter explained that the Weisbergs submitted their
resignation on May 1, 2001. The letter concluded: "Under the current circumstance,
the Board of Directors of Temple Emanuel requests that Temple Beth El not apply any
reciprocal understanding between the Temples which would deny the Weisbergs the
right to membership in Temple Beth El." However, the board of Temple Emanuel also
determined that the Weisbergs would be required to pay the special assessment if they
were to reapply for membership with Temple Emanuel. In November 2001, Temple
Beth El accepted the Weisbergs as members. 
         Kenny Fox, president of Temple Emanuel, testified that London, as Temple
treasurer, was the custodian of all financial documents and information concerning the
Temple congregation. She was responsible for maintaining an accurate record of all
receipts and disbursements, including but not limited to payment of dues and
assessments. She was the person with the most knowledge of each member's
financial status and standing. She had the duty and official authority to determine a
member's financial standing and, if necessary, to inform another temple about a
member's financial standing in response to the other temple's inquiry. Fox testified
that London had the authority to determine the Weisbergs' financial standing with
Temple Emanuel at the time they resigned. 
          According to Greenspan and Harry Holzman, president of Beth El, London was
doing her job when she responded to the inquiry regarding the Weisbergs. Holzman
denied that Temple Emanuel had a "reciprocal understanding" with Temple Beth El
regarding the admission of only members who left their former places of worship in
good standing. Rather, Holzman testified, "We will not accept anybody that has left
any other location, temple, synagogue, that is not in good standing. . . . That left not
in good standing . . . not necessarily just McAllen." 
         Holzman testified that if a member of Temple Beth El were to resign from
membership while still owing an assessment, the member would not be considered to
be in good standing on resignation. Holzman testified that the special assessment was
due when it had been voted on and approved by the Temple membership, even if the
final delinquent due date had not arrived. Holzman and Greenspan both testified that
the Weisbergs owed the assessment to Temple Emanuel. Accordingly, the Weisbergs
did not leave Temple Emanuel in good standing. 
         In their summary-judgment affidavits, the Weisbergs testified that the phrase
"not in good standing" was a code phrase for "deadbeat." They believed that
London's actions were malicious, vicious, and vindictive. They believed that London
purposely gave false information to Temple Beth El to tarnish their good names and
prevent their attendance at Temple during High Holy Days. In their faith, the only
thing a person has is one's good name. London's actions affected their ability to
worship and could potentially adversely affect their mercantile business. They
consistently met their financial obligations in general and particularly with regard to the
Temple. 
         The Weisbergs believed that London's actions were motivated by dislike of their
daughter, Monica, because of Monica's viewpoints regarding the Temple's former rabbi
and the Temple's administration. They believed that London did not have the authority
to determine their standing without authorization from the board.
         In contrast, London thought she had a good relationship with the Weisbergs, but
not as good a relationship with their daughter. They had different viewpoints on
certain issues, including disagreements regarding the Temple's previous rabbi and
certain financial aspects of the Temple. Nevertheless, London testified Monica and she
had a cordial relationship. London never spoke with Monica about her viewpoints. 

III. SUMMARY-JUDGMENT ANALYSIS
A. Standard of Review
          The function of summary judgment is to eliminate patently unmeritorious
claims and defenses, not to deprive litigants of the right to a jury trial. Alaniz v.
Hoyt, 105 S.W.3d 330, 344 (Tex. App.–Corpus Christi 2003, no pet.). We review
the evidence "in the light most favorable to the nonmovant, disregarding all contrary
evidence and inferences." See KPMG Peat Marwick v. Harrison County Housing Fin.
Corp., 988 S.W.2d 746, 748 (Tex. 1999); Branton v. Wood, 100 S.W.3d 645, 646
(Tex. App.–Corpus Christi 2003, no pet.). The movant bears the burden of showing
both no genuine issue of material fact and entitlement to judgment as a matter of
law.  Alaniz, 105 S.W.3d at 345. We affirm a trial court's ruling on a summary-judgment motion if any of the theories advanced in the motion is meritorious. 
State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993); Boren v.
Bullen, 972 S.W.2d 863, 865 (Tex. App.–Corpus Christi 1998, no pet.). We review
a summary judgment de novo to determine whether a party established its right to
prevail as a matter of law. Ortega v. City Nat'l Bank, 97 S.W.3d 765, 771 (Tex.
App.–Corpus Christi 2003, no pet.). 
         The non-movant has the burden to respond to a traditional summary-judgment
motion if the movant conclusively: (1) establishes each element of its cause of action
or defense; or (2) negates at least one element of the non-movant's cause of action
or defense. Alaniz, 105 S.W.3d at 345. Thus, summary judgment for a defendant
is proper if the defendant disproves at least one element of each of the plaintiff's
claims or affirmatively establishes each element of an affirmative defense to each
claim. Id.    The trial court did not specify the ground or grounds on which it granted
the motion for summary judgment. Accordingly, we will uphold the summary
judgment if any of the grounds raised in the summary-judgment motion has merit. 
Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999); Alaniz, 105 S.W.3d
at 344.
B. London's Summary-Judgment Grounds
         London moved for a traditional summary judgment on the grounds that London
could not be held personally liable for her actions because she was acting in her
corporate capacity as treasurer for Temple Emanuel. London's motion for summary
judgment also attacked the Weisbergs' defamation claim on the grounds that her
statement was substantially true, protected by a qualified privilege, or was an
expression of opinion. London further argued that the Weisbergs could not prevail on
their claims for intentional infliction of emotional distress because her conduct was not
extreme and outrageous, and the Weisbergs had not shown severe emotional distress. 
                                 C. The Weisbergs' Issues on Appeal
1. Sufficiency of the Motion and Pleadings
         In their first three issues, the Weisbergs attack the sufficiency of London's
motion for summary judgment and the pleadings underlying the motion. In issue one,
the Weisbergs contend that London's motion is fatally deficient in that it fails to
specify what evidence supports it or how the evidence supports its contentions. We
agree that general reference to a voluminous record that does not direct the court or
the parties to the evidence on which the movant relies is not sufficient. Rogers v.
Ricane Enters., Inc., 772 S.W.2d 76, 81 (Tex. 1989); Upchurch v. Alviar, 5 S.W.3d
274, 285 (Tex. App.–Amarillo 1999, pet. denied). Nonmovants are entitled to "fair
notice" of summary-judgment movants' contentions. Upchurch, 5 S.W.3d at 285;
Pettite v. SCI Corp., 893 S.W.2d 746, 747 (Tex. App.–Houston [1st Dist.] 1995, no
writ); Dear v. City of Irving, 902 S.W.2d 731, 734 (Tex. App.–Austin 1995, writ
denied). Here, however, London's motion for summary judgment identified and
incorporated five attached exhibits, including an affidavit and excerpts from four
depositions. The motion included specific citations to the exhibits, including
references to the deposition excerpts by page and line. We conclude that London's
motion for summary judgment adequately directed the court and the Weisbergs to the
evidence made the basis of the motion. We overrule the Weisbergs' first issue.
         The Weisbergs' complaint in their second issue centers on London's request that
the trial court take judicial notice of its file. The Weisbergs argue that a trial court may
not take judicial notice in a summary-judgment proceeding. However, the only
requirement for summary-judgment proof is that it be "on file at the time of the
hearing, or filed thereafter and before judgment with permission of the court." Tex.
R. Civ. P. 166a(c). When considering a summary-judgment motion, the trial court may
judicially notice documents that are part of its record in the case at issue, since they
are already on file and available for the court's consideration. See Jones v. Jones,
888 S.W.2d 849, 852-53 (Tex. App.–Houston [1st Dist.] 1994, writ denied)
(citing McCurry v. Aetna Cas. & Sur. Co., 742 S.W.2d 863, 867-68 (Tex.
App.–Corpus Christi 1987, writ denied)); see also Mowbray v. Avery, 76 S.W.3d 663,
689 (Tex. App.–Corpus Christi 2002, pet. denied) (requiring documents in court's file
to be in form acceptable for summary-judgment proceedings). We reject the
Weisbergs' premise. Moreover, we note that the Weisbergs have not specifically
identified any documents in the court's file that would be inappropriate for judicial
notice. Accordingly, we overrule the Weisbergs' second issue. 
         In their third issue, the Weisbergs contend London did not plead the affirmative
defenses of truth, substantial truth, or privilege in response to the Weisbergs'
defamation claim. A properly pleaded affirmative defense, supported by
uncontroverted summary-judgment evidence, may serve as the basis for a summary
judgment. See Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 495 (Tex.
1991). An unpleaded affirmative defense may also serve as the basis for a summary
judgment when it is raised in the summary-judgment motion, but the opposing party
does not object in either its written response or before the rendition of judgment. See
id. 
2. Waiver
         The record confirms that London failed to plead truth as an affirmative defense. 
The Weisbergs objected. Accordingly, we sustain the Weisbergs' third issue with
regard to London's summary-judgment ground of truth as an affirmative defense. 
However, the Weisbergs did not object that London had not pleaded privilege. We
hold that the Weisbergs waived any complaint on appeal that London's summary-judgment ground of privilege is not supported by her pleadings. See id. Accordingly,
we overrule the Weisberg's third issue with regard to London's summary-judgment
ground of privilege as an affirmative defense.  
D. Deficiency of Order Granting Summary Judgment
         In their sixth issue, the Weisbergs contend that the trial court should have
specified the grounds on which it granted summary judgment. They argue that the
trial court's failure to do so "raises constitutional concerns." However, it is well-settled that the trial court need not identify the ground it relied on in granting summary
judgment. See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996). 
Accordingly, we overrule the Weisbergs' sixth issue. 
E. Defamation
         The Weisbergs' fourth and fifth issues generally assert that fact issues preclude
summary judgment. Issues nine through fourteen attack the propriety of summary
judgment on their claim for defamation.


 
         Texas law recognizes two types of defamation: libel and slander. Alaniz,
105 S.W.3d at 345. Libel is a defamation expressed in written or other graphic form
that tends to injure a living person's reputation and thereby expose the person to
public hatred, contempt, ridicule, or financial injury, or to impeach any person's
honesty, integrity, virtue, or reputation. See Tex. Civ. Prac. & Rem. Code
Ann. § 73.001 (Vernon 1997); see Alaniz, 105 S.W.3d at 345. Slander is a
defamatory statement that is orally communicated or published to a third person
without legal excuse. Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 646
(Tex. 1995); Alaniz, 105 S.W.3d at 345. 
1. Elements of Defamation
         For a private individual to prevail on a defamation claim, the plaintiff must prove
that the defendant: (1) published a statement (2) that was defamatory about the
plaintiff (3) while acting with negligence regarding the truth of the statement.
WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998); Entravision
Communications Corp. v. Belalcazar, 99 S.W.3d 393, 398-99 (Tex. App.–Corpus
Christi 2003, pet. denied). The threshold issue of whether the words used are capable
of a defamatory meaning is a question of law for the court. Turner v. KTRK
Television, Inc., 38 S.W.3d 103, 114 (Tex. 2000); Columbia Valley Reg'l Med. Ctr.
v. Bannert, 112 S.W.3d 193, 198 (Tex. App.–Corpus Christi 2003, no pet.). We
construe the statement as a whole in light of surrounding circumstances based on how
a person of ordinary intelligence would perceive the entire statement. Turner,
38 S.W.3d at 114; Musser v. Smith Prot. Servs., Inc., 723 S.W.2d 653, 655 (Tex.
1987). 
2. Privilege
         Slanderous statements are subject to a conditional or qualified privileged. TRT
Dev. Co.-KC v. Meyers, 15 S.W.3d 281, 286 (Tex. App.–Corpus Christi 2000, no
pet.) (quoting Rogers v. Cassidy, 946 S.W.2d 439, 447 (Tex. App.–Corpus Christi
1997, no writ)); Hanssen v. Our Redeemer Lutheran Church, 938 S.W.2d 85, 92 (Tex.
App.–Dallas 1996, writ denied); Lomas Bank USA v. Flatow, 880 S.W.2d 52, 54
(Tex. App.–San Antonio 1994, writ denied); Assoc. Tel. Directory Publishers, Inc. v.
Better Bus. Bureau of Austin, Inc., 710 S.W.2d 190, 192 (Tex. App.–Corpus Christi
1986, writ ref'd n.r.e.). Conditionally or qualifiedly privileged statements, even though
slanderous, are not actionable when made in good faith on a subject matter in which
the author has an interest or a duty to another person having a corresponding interest
or duty. TRT Dev. Co.-KC, 15 S.W.3d at 286. A privilege attaches to statements
that occur under circumstances where "any one of several persons having a common
interest in a particular subject matter may reasonably believe that facts exist that
another, sharing that common interest, is entitled to know." See Hanssen,
938 S.W.2d at 92. 
         A conditional or qualified privilege arises out of the circumstances in which the
allegedly false statement is published in a lawful manner for a lawful purpose. Hearst
Corp. v. Skeen, 130 S.W.3d 910, 926 (Tex. App.–Fort Worth 2004, pet. filed). 
An interest giving rise to a qualified privilege may be that of the publisher of
the communication, the recipient of the communication, or a third person. 
TRT Dev. Co.-KC, 15 S.W.3d at 286; Pioneer Concrete of Tex., Inc. v. Allen,
858 S.W.2d 47, 50 (Tex. App–Houston [14th Dist.] 1993, writ denied); Kaplan v.
Goodfried, 497 S.W.2d 101, 105 (Tex. Civ. App.–Dallas 1973, no writ). 
         Privilege is an affirmative defense. Denton Pub'g Co. v. Boyd, 460 S.W.2d
881, 884 (Tex. 1970); TRT Dev. Co.-KC, 15 S.W.3d at 286. London has the burden
of proving that the communication is privileged. Boyd, 460 S.W.2d at 884; TRT Dev.
Co.-KC, 15 S.W.3d at 286. When the facts are undisputed and the language used in
the publication is not ambiguous, the question of privilege is ordinarily one of law for
the court. TRT Dev. Co.-KC, 15 S.W.3d at 286; see Dixon v. Southwestern Bell Tel.
Co., 607 S.W.2d 240, 241 (Tex. 1980). 
         The Weisbergs dispute that any privilege applies. They cite Holzman's
testimony, in which he specifically denied the existence of a reciprocal agreement
between the two Temples. The record shows that Holzman testified, "We don't have
an understanding – a reciprocal understanding." However, Holzman further clarified
that "We will not accept anybody that has left any other location, temple, synagogue,
that is not in good standing. . . . That left not in good standing . . . not necessarily just
McAllen." Considering the entirety of Holzman's testimony, along with that of
Greenspan, London, and Fox, it is clear that various temples share in a common
practice to ascertain whether or not applicants are in good standing with their former
temples. London, who had a duty to ascertain the Weisbergs' standing, reasonably
believed she had a duty to report the information to Greenspan. Greenspan and the
members of Temple Beth El's board who received the information had an interest in
the information as it related to the Weisbergs' application for membership. See
Hanssen, 938 S.W.2d at 92-93. Assuming without deciding that the communications
and actions at issue are defamatory, we hold they were subject to a qualified privilege. 
See id. 
3. Malice
         The Weisbergs next argue that any privilege was defeated by malice. A
conditional or qualified privilege is defeated when the privilege is abused, such as
when the person making the defamatory statement knows the statement is false or
acts for some purpose other than protecting the privileged interest. Hearst Corp.,
130 S.W.3d at 926. The speaker abuses the privilege by making the statement with
actual malice. TRT Dev. Co.-KC, 15 S.W.3d at 286; Grant v. Stop-N-Go Mkt. of Tex.,
Inc., 994 S.W.2d 867, 874 (Tex. App.–Houston [1st Dist.] 1999, no writ). The
defendant communicates defamatory words with actual malice when the defendant
knows the words are false or recklessly disregards whether the words are false or not.
Randall's Food Mkts., 891 S.W.2d at 646; Alaniz, 105 S.W.3d at 346. "Reckless
disregard" is defined as a "high degree of awareness of probable falsity, for proof of
which the plaintiff must present sufficient evidence to permit the conclusion that the
defendant in fact entertained serious doubts about the truth of [the] publication." Carr
v. Brasher, 776 S.W.2d 567, 571 (Tex. 1989); TRT Dev. Co.-KC, 15 S.W.3d at 286.
         Actual malice is a term of art distinct from traditional common-law malice. 
Hagler, 884 S.W.2d at 771; Alaniz, 105 S.W.3d at 346; Wal-Mart Stores, Inc. v.
Lane, 31 S.W.3d 282, 291 (Tex. App.–Corpus Christi 2000, pet. denied). Actual
malice does not include ill will, spite, or evil motive. Hagler v. Proctor & Gamble Mfg.
Co., 884 S.W.2d 771, 771 (Tex. 1994) (per curiam); Alaniz, 105 S.W.3d at 346;
Lane, 31 S.W.3d at 291. 
         In a defamation case, the standard is subjective: there must be sufficient
evidence to permit the conclusion that the defendant actually had a high degree of
awareness of probable falsity. Alaniz, 105 S.W.3d at 347. Accordingly, the failure
to investigate or verify information, without more, cannot establish actual malice. Id.;
Freedom Communications, Inc. v. Brand, 907 S.W.2d 614, 622 (Tex. App.–Corpus
Christi 1995, no writ). 
         The law presumes good faith and want of malice where a party has a qualified
privilege. Ching v. Methodist Children's Hosp., 134 S.W.3d 235, 242 (Tex.
App.–Amarillo 2003, pet. denied); Marathon Oil Co. v. Salazar, 682 S.W.2d 624, 630
(Tex. App.–Houston [1st Dist.] 1984, writ ref'd n.r.e.). Here, London testified to her
belief regarding the truth of her statements. Greenspan's and Holzman's testimony
supported her belief in the veracity of her statement. The Weisbergs and their
daughter presented testimony they believed London's actions to be motivated by spite
and ill will. However, none of the evidence suggests London entertained serious
doubts as to the truth of her statements or made the statements with a high degree
of awareness of their probable falsity. We have examined the summary-judgment
record and find no other controverting proof on the question of actual malice. 
         The Weisbergs brought a common-law defamation claim against London in a
civil court, which we have resolved by applying secular law. We do not review the
ecclesiastical judicial process or determine the efficacy of the parties' religious beliefs
and practices. See Tilton v. Marshall, 925 S.W.2d 672, 678 (Tex. 1996) (orig.
proceeding) ("To avoid conducting 'heresy trials,' courts may not adjudicate the truth
or falsity of religious doctrines or beliefs."). We conclude that the Weisbergs did not
overcome the presumption of good faith and want of malice that attached to London's
qualifiedly privileged statements. See Marathon Oil Co., 682 S.W.2d at 630. 
Accordingly, we hold that London conclusively established her affirmative defense of
qualified privilege. See Alaniz, 105 S.W.3d at 345. Consequently, the trial court
properly granted London's summary judgment on the Weisbergs' claim of defamation. 
See id. We overrule the Weisbergs' fourth, fifth, eleventh, twelfth, thirteenth, and
fourteenth issues. 

F. Intentional Infliction of Emotional Distress
         The Weisbergs' fifteenth, sixteenth, and seventeenth issues attack the trial
court's summary judgment on their cause of action for intentional infliction of
emotional distress.


 In 1993, the Texas Supreme Court recognized the independent
tort of intentional infliction of emotional distress, adopting the elements of section 46
of the restatement. Tiller v. McClure, 121 S.W.3d 709, 713 (Tex. 2003) (per curiam)
(citing Twyman v. Twyman, 855 S.W.2d 619, 621-22 (Tex. 1993)); see Restatement
(Second) of Torts § 46 (1965). To recover under section 46, a plaintiff must prove: 
(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and
outrageous; (3) the actions of the defendant caused the plaintiff emotional distress;
and (4) the resulting emotional distress was severe. See Tiller, 121 S.W.3d at 713. 
We examine the summary-judgment evidence under the formulation applied to the
claim of intentional infliction of emotional distress by the Texas Supreme Court in
Tiller. See id. We decline the Weisbergs' invitation to apply a different standard in
non-employment cases. We overrule the Weisbergs' fifteenth issue. 
          London argues that her conduct was not extreme and outrageous and that the
Weisbergs have not shown that they suffered severe emotional distress. Extreme and
outrageous conduct is conduct "so outrageous in character, and so extreme in degree,
as to go beyond all possible bounds of decency, and to be regarded as atrocious, and
utterly intolerable in a civilized community." Twyman, 855 S.W.2d at 621 (quoting
Restatement (Second) of Torts § 46 cmt. D (1965)); see Tiller, 121 S.W.3d at 713;
see also Larson v. Family Violence & Sexual Assault Prevention Ctr., 64 S.W.3d 506,
515 (Tex. App.–Corpus Christi 2001, pet. denied). The fact that a defendant's
conduct is tortious or otherwise wrongful does not render it extreme and outrageous. 
Bradford v. Vento, 48 S.W.3d 749, 758 (Tex. 2001). 
         It is for the court to determine, in the first instance, whether a defendant's
conduct was extreme and outrageous. Tiller, 121 S.W.3d at 713; Wornick Co. v.
Casas, 856 S.W.2d 732, 734 (Tex. 1993); Larson, 64 S.W.3d at 515. When
reasonable minds may differ, it is for the jury, subject to the court's control, to
determine whether, in the particular case, the conduct was sufficiently extreme and
outrageous to result in liability. Tiller, 121 S.W.3d at 713. In determining whether
conduct is extreme and outrageous, courts often consider the defendant's course of
conduct, the context of the parties' relationship, whether the defendant knew the
plaintiff was particularly susceptible to emotional distress, and the defendant's motive
or intent. See, e.g., GTE S.W., Inc. v. Bruce, 998 S.W.2d 605, 615 (Tex. 1999);
Fields v. Teamsters Local Union No. 988, 23 S.W.3d 517, 530-32 (Tex.
App.–Houston [1st Dist.] 2000, pet. denied).
         Here, London verbally informed Greenspan that the Weisbergs were not in "good
standing" and confirmed the information by letter. Fox testified London had the duty
and official authority to determine a member's financial standing and provide the
information to another temple in response to an inquiry. London responded to
Greenspan's request both verbally and in writing. The communications were within
the scope of London's duties with the Temple. Both Greenspan and Holzman testified 
it was customary to verify applicants' standing with their prior places of worship when
reviewing applications. Greenspan and Holzman agreed that London's responses to
Greenspan were normal and customary and that London was performing her duties as
treasurer of Temple Emanuel. 
         Based on the summary-judgment evidence, we conclude that reasonable minds
cannot differ about whether London's actions were "atrocious, and utterly intolerable
in a civilized community." See id. Thus, we hold that London disproved at least one
element of the Weisbergs' cause of action for intentional infliction of emotional
distress. See Alaniz, 105 S.W.3d at 345. Consequently, the trial court properly
granted London's summary judgment on the Weisbergs' claim of intentional infliction
of emotional distress. See id. We overrule the Weisbergs' fifteenth, sixteenth, and
seventeenth issues. 
V. CONCLUSION
         We need not address the Weisberg's seventh, eighth, ninth, and tenth issues,
as they are unnecessary to final disposition of this appeal. See Tex. R. App. P. 47.1. 
We do not address the Weisbergs' eighteenth issue, as it is moot. We affirm the
summary judgment. 
                                                      ERRLINDA CASTILLO
                                                      Justice

Memorandum Opinion delivered and
filed this 31st day of August, 2004.