[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 00-11949
_____

D.C. Docket No. 96-01971-CV-ASG

MARIA DEL CARMEN MIRANDA DE VILLALBA,

Plaintiff-Appellant,

versus

COUTTS & CO. (USA) INTERNATIONAL,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(May 11, 2001)**

Before EDMONDSON, FAY and NEWMAN*, Circuit Judges.

NEWMAN, Circuit Judge:

_____

*Honorable Jon O. Newman, U.S. Circuit Judge for the Second Circuit, sitting by designation.

This appeal concerns the scope of the provision of the Right to Financial Privacy Act of 1978 ("RFPA") that insulates a financial institution from liability for certain disclosures to a government authority concerning possible law violations. See 12 U.S.C. § 3403(c). Maria Villalba appeals from a judgment of the District Court for the Southern District of Florida (Alan S. Gold, District Judge), dismissing, on motion for summary judgment, her suit under the RFPA against Defendant-Appellee Coutts & Co. USA. We conclude that the disclosure was permissible under the RFPA and therefore affirm.

## Background

Plaintiff-Appellant Maria Villalba resides in Colombia and is a citizen of both Colombia and Spain. She maintains an account with Defendant-Appellee Coutts & Co. USA ("Coutts"), a Florida corporation. Coutts is a subsidiary of National Westminster Bank PLC, and is an "Edge Act corporation," authorized to engage in foreign banking.[1]

In May 1996, the United States filed an in rem complaint against $200,000 in accounts at Coutts and other financial institutions. The accounts at Coutts were controlled by Villalba and her relatives. The Government's complaint alleged that the

_____

[1]An "Edge Act corporation" is a corporation formed for the purpose of "engaging in international or foreign banking or other international or foreign financial operations . . . either directly or through the agency, ownership or control of local institutions in foreign countries." 12 U.S.C. § 611.

2

funds in the accounts were obtained from money laundering. The District Court for the Southern District of New York (David G. Trager, District Judge) immediately issued a civil arrest warrant for the funds, and the warrant was faxed to Coutts. The warrant ordered Coutts to "arrest, attach and seize the Property until further order of the Court."

A day or two after these warrants were executed, according to a deposition of the Assistant U.S. Attorney ("AUSA") handling the forfeiture action, "someone" at Coutts told the AUSA that Villalba had unsuccessfully attempted to wire transfer money out of her account at Coutts; the AUSA "believe[d] the number given was $500,000." Coutts denies that this disclosure ever occurred. Moreover, according to Coutts, the only known attempted transfer of seized funds occurred three days after Coutts received the warrant, when Villalba sought to transfer $75,000. In July 1996, Villalba and several of her relatives filed this civil action in the Southern District of Florida, alleging that Coutts's disclosure of the alleged $500,000 withdrawal attempt violated the RFPA, and other laws. The RFPA prohibits bank employees from disclosing customers' financial information to the governmental authorities without customer authorization, subject to various exceptions. After dismissal of the original complaint and reinstatement following a prior appeal to this Court, see Villalba v. Coutts & Co. (USA), 156 F.3d 185 (11th Cir. 1998) (table), the complaint has been

narrowed to include only a claim by Villalba against Coutts under the RFPA.

Coutts sought summary judgment on the ground that, even if the alleged disclosure of an attempted $500,000 wire transfer had occurred, it is protected from liability by 12 U.S.C. § 3403(c), which provides:

> Nothing in this chapter shall preclude any financial institution, or any officer, employee or agent of a financial institution, from notifying a Government authority that such institution, or officer, employee, or agent has information which may be relevant to a possible violation of any statute or regulation. Such information may include only the name or other identifying information concerning any individual, corporation, or account involved in and the nature of any suspected illegal activity. . . . Any financial institution, or officer, employee, or agent thereof, making a disclosure of information pursuant to this subsection, shall not be liable to the customer under any [federal or state law].

The District Court agreed and granted summary judgment in favor of Coutts.

## Discussion

Villalba contends initially that the District Court erred in permitting the section 3403(c) defense to be asserted for the first time on motion for summary judgment. We disagree. A court may consider an affirmative defense that did not appear in the answer, if the plaintiff has suffered no prejudice from the failure to raise the defense in a timely fashion. See Hassan v. United States Postal Service, 842 F.2d 260, 263 (11th Cir. 1988). Coutts's answer included as an affirmative defense the safe harbor

4

provision of the Annunzio-Wylie Anti-Money Laundering Act, 31 U.S.C. § 5318(g)(3). This provision insulates a financial institution from liability for disclosures "of any possible violation of law or regulation or a disclosure pursuant to this subsection or any other authority." Id. Whether or not this provision covers a disclosure pursuant to section 3403(c) (the District Court thought it did not), the two provisions are sufficiently similar that the late assertion of section 3403(c) could not realistically cause prejudice to a plaintiff who was timely alerted to a section 5318(g)(3) defense.

The initial question on the merits of the section 3403(c) defense is whether there was a factual dispute that Coutts "suspected illegal activity." 31 U.S.C. § 3403(c). Villalba contends that since Coutts denied that the disclosure was made, by its "own admission, it never had such a 'suspicion.'" Brief for Appellant at 13. However, a business entity like Coutts is entitled to contend in the alternative that it is unaware of any disclosure made by its employees, but that if the alleged disclosure was made, the employee making it indisputably had a basis for reasonable suspicion of illegal activity.[2] That basis exists here where a depositor attempts to wire a large amount of funds out of an account that has been frozen by court order because of

---

[2]Villalba contends that the insulation of section 3403(c) is available only where the disclosure is made on the basis of a subjective suspicion of illegal activity; Coutts counters that only objectively reasonable suspicion is required. We need not resolve that dispute because, for purposes of this appeal, we will assume that subjective suspicion is required.

suspected money-laundering.

The requisite suspicion is not precluded, as Villalba contends, by the fact that Coutts did not file a Suspicious Activity Report ("SAR"), as required by 31 C.F.R. § 103.18(b)(3) (2001). A bank is obliged "immediately [to] notify, by telephone, an appropriate law enforcement authority in addition to filing timely a SAR." Id. If the wire transfer attempt was disclosed (which must be assumed for purposes of the summary judgment motion), no reasonable jury could fail to find, on the undisputed circumstances, that the person making the immediate disclosure had a reasonable suspicion of illegal activity, leaving the failure subsequently to file an SAR without sufficient probative force to preclude such a finding. Whether the failure to file the SAR was due to neglect or a mistaken belief that it was not required because the Government was already initiating action is irrelevant to the justification for the alleged disclosure.

The further issue on the merits is whether the extent of the alleged disclosure exceeded the scope of the information section 3403(c) permits to be revealed. Even if we assume, as Villalba contends, that disclosure is limited to the name of the individual and "the nature of any suspected illegal activity," 12 U.S.C. § 3403(c) (emphasis added), we agree with the District Court that the alleged mention of the $500,000 amount of the requested wire transfer did not go beyond the "nature" of the

6

suspected activity. What made the request indisputably suspicious was its size, and we would be trifling with the statute if we construed it to permit disclosure of request to transfer "a very large amount," but not "a $500,000 amount." See Bailey v. USDA, 59 F.3d 141, 143 (10th Cir. 1995) (disclosure of withdrawal and deposit records can qualify as information about "nature of the suspected illegal activity," where these amounts are necessary to show grounds for the bank's suspicion). The congressional concern for privacy was sufficiently observed by not revealing any details of the purported recipient of the funds requested to be wired.

## Conclusion

The judgment of the District Court is AFFIRMED.